# Exhibit A
## Complaint

Electronically Filed
10/2/2020 3:28 PM
Steven D. Grierson
CLERK OF THE COURT

COMP
CHRISTENSEN JAMES & MARTIN, CHTD.
Kevin B. Christensen, Esq. (175)
Evan L. James, Esq. (7760)
Laura J. Wolff, Esq. (6869)
7440 W. Sahara Ave.
Las Vegas, NV 89117
(702)255-1718
*Attorneys for Plaintiffs*

CASE NO: A-20-822405-C
Department 22

## DISTRICT COURT
## CLARK COUNTY, NEVADA

| | |
|---|---|
| Jeff Corbett, an individual; John Jenkins, an individual; Scott Murray, an individual; and David Newton, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>Public Employees' Retirement System, ex rel. State of Nevada; Las Vegas Metropolitan Police Department, ex rel. Clark County Nevada and the City of Las Vegas; and Does I-X, inclusive,<br><br>Defendants. | Case No.:<br><br>Dept. No.:<br><br>**COMPLAINT**<br><br>JURY DEMANDED<br><br>Arbitration Exemption Claimed:<br>1. Exceeds $50,000.00,<br>2. Extraordinary Relief (Declaratory and Injunctive). |

COME NOW, the Plaintiffs, Jeff Corbett, John Jenkins, Scott Murray and David Newton ("Plaintiffs" or "K9 Handlers"), by and through their attorneys, Christensen James & Martin, Chtd., and complain, for and on behalf of themselves only, as follows:

### PARTIES, JURISDICTION & VENUE

1. At all times relevant to this Complaint, Plaintiffs were residents of Clark County, Nevada.

2. The Public Employees Retirement System ("PERS") is an intended agency of the State of Nevada.

3. Las Vegas Metropolitan Police Department ("Metro") is a joint agency of Clark County, Nevada and the City of Las Vegas, both of which are political subdivisions of the State of Nevada.

4. The true names and capacities, whether partnership, individual, corporate, company, associate or otherwise of Does I-X, inclusive are unknown to the Plaintiffs at this time and said Defendants are therefore sued by fictitious names. The Plaintiffs reserve the right to amend the Complaint to insert additional charging allegations, together with the true identities and capacities, when the same have been ascertained.

5. The State of Nevada waived sovereign immunity for itself and political subdivisions pursuant to NRS 41.031 et seq.

6. At all times material herein, Defendants were and remain subject to the jurisdiction of the Court.

7. Venue for this proceeding is proper before the above-entitled Court as the facts and circumstances alleged herein occurred in Clark County, Nevada.

## FIRST CLAIM

(Unpaid Pension Contributions / Benefits – All Defendants)

8. The foregoing paragraphs are incorporated herein.

9. Plaintiffs are employees of, or retirees from,[1] Metro, and have worked as K9 Handlers for periods ranging between about 14 to 20 years.

10. During their time working as K9 Handlers, Plaintiffs have been paid to perform many duties including, but not limited to:

---

[1] Present tense verbs are often used for ease of writing even though a past tense verb is more appropriate for a plaintiff who is a retiree.

    a. Being required to be on a 24-hour call-out and be on the road within thirty minutes;

    b. Routinely working varying hours, shifts and frequent overtime; and

    c. Accepting responsibility for the complete care, control, custody, and actions (hereinafter "manage and care") of Police Service Dogs ("PSDs") 24 hours per day, 365 days per year.

11. For K9 Handlers, a tour of duty or shift is defined as the span of hours during which an individual, or unit, is assigned to work.

12. K9 Handlers are assigned to work 24 hours per day and 365 days per year to manage and care for PSDs.

13. Despite being assigned to manage and care for PSDs 24 hours per day, 365 days per year, K9 Handlers are only paid 10 or 15 hours, depending upon the number of assigned PSDs, of work per pay period to manage and care for PSDs ("Canine Pay").

14. Canine Pay is the same each pay period regardless of how many hours K9 Handlers actually work to manage and care for PSDs.

15. K9 Handlers work more than the number of hours allotted per pay period to manage and care for PSDs.

16. Because Canine Pay is paid at a set number of hours regardless of time worked, it is a base wage and not overtime pay.

17. Plaintiffs are and were enrolled in the PERS Police and Firefighters' Retirement Fund ("PERS Police Fund") during their tenure as K9 Handlers and through retirement.

18. Metro is obligated to contribute funds to PERS in anticipation of the retirement of its employees, including K9 Handlers.

19. The payment amount paid to K9 Handlers for managing and caring for PSDs, if not part of base pay, is extra duty pay ("Extra Duty Pay").

20. It is Metro's standard practice to include the Extra Duty Pay in employment contracts for the calendar year in which it is paid.
21. It is Metro's standard practice to include the Extra Duty Pay in the official job description of K9 Handlers for the calendar year in which it is paid.
22. The Extra Duty Pay is included in the K9 Handlers employment contract with Metro.
23. The Extra Duty Pay is included in the official job description covering the K9 Handlers.
24. The Extra Duty Pay meets the definition of "Compensation" defined by NRS 286.025(c).
25. PSDs are animals capable of inflicting bodily injury.
26. PSDs must be properly managed to prevent injury to K9 Handlers and/or other individuals.
27. A K9 Handler must receive special training before being assigned a PSD.
28. The risk of injury from a PSD makes the management and caring for a PSD hazardous.
29. The time spent caring for PSDs is hazardous duty and therefore constitutes "compensation" as "additional payment" as defined by NRS 286.025(2).
30. If K9 Handlers are considered to be "off duty" after an assigned shift they hold themselves "ready for duty" and return to work after their regular working hours every time they manage or care for a PSD.
31. The 10 or 15 hours per pay period allotted to K9 Handlers to manage and care for PSDs is therefore "Additional payment" as defined by NRS 286.025(2).
32. As "compensation," K9 Handlers are entitled to receive pension credit for the time spent to manage and care for PSDs.

33. PERS has wrongly withheld Canine Pay from K9 Handler's pension calculations and benefits.
34. Metro has failed to pay contributions to PERS for Canine Pay.
35. PERS and/or Metro are responsible for and liable to the Plaintiffs for unpaid pension contributions/benefits in an amount that exceeds $15,000.00 for each Plaintiff.
36. It has been necessary for Plaintiffs to hire an attorney to recover their damages, and Plaintiffs are entitled to recovery reasonable legal fees.

## SECOND CLAIM
(Unpaid Overtime – Metro)

37. The foregoing paragraphs are incorporated herein.
38. 29 U.S.C. § 201 et seq. requires Metro to pay Plaintiffs a minimum wage.
39. 29 U.S.C. § 201 et seq. requires Metro to pay Plaintiffs overtime wages for actual overtime worked.
40. Metro knowingly suffered or permitted K9 Handlers to work in excess of regular hours in the possession, management and care of PSDs.
41. Metro expected K9 Handlers to work off the clock in the possession, management and care of PSDs.
42. Metro is indebted to Plaintiffs for unpaid overtime and related damages in an amount that exceeds $15,000.00.
43. Metro failed to pay K9 Handlers proper overtime for the management and care of PSDs.

## THIRD CLAIM
(Assignment Differential Pay – Metro)

44. The foregoing paragraphs are incorporated herein.
45. Plaintiffs have a Police Officer II classification.

46. Plaintiffs complete specialized training including, but not necessarily limited to, the following:
    a. Nearly 400 hours of training with a new PSD before being able to work as a certified K9 Handler;
    b. SWAT school with other new SWAT operators and regular conduct-maintenance training with SWAT operators;
    c. Training with the air unit to acclimate their PSDs to flying in a helicopter;
    d. Daily maintenance training with their PSDs that is documented on training logs;
    e. K9 Handlers also participate in out-of-state training for weeks at a time; and
    f. In addition to their regular duties, K9 Handlers have additional responsibilities associated with the units in which they integrate, including SWAT, ARMOR, Bomb Squad, Narcotics, Search and Rescue, Emergency Management and Major Violators.
47. Specialized sections at LVMPD receive Assignment Differential Pay ("ADP").
48. Plaintiffs have been denied ADP despite qualifying for such pay.
49. Plaintiffs are entitled to recover ADP.
50. Plaintiffs are entitled to recover overtime associated with ADP.
51. Plaintiffs are entitled to have retirement credits for ADP.

FOURTH CLAIM

(Breach of Contract – PERS)

52. The foregoing paragraphs are incorporated herein.
53. PERS presented a Summary Plan Description ("SPD") to Plaintiffs setting forth information regarding contributions and benefits.

54. PERS' representations in the SPD constitute promises.
55. Plaintiffs relied upon the SPD and promises made therein.
56. Plaintiffs accepted the promises through reliance and continued expectations that PERS would perform in accordance with the promises.
57. The SPD states that benefit calculations include average compensation of the thirty-six highest consecutive months of compensation.
58. PERS has not included K9 Pay in the calculation of benefits owed or to which K9 Handlers are entitled.
59. PERS' failure to include K9 Pay is a breach of contact.
60. PERS' failure to include ADP calculations in retirement benefits is a breach of contract.

## FIFTH CLAIM

(Breach of Fiduciary Duty – All Defendants)

61. The foregoing paragraphs are incorporated herein.
62. Metro is responsible to make benefit contributions to PERS for K9 Handlers.
63. PERS is responsible to pay K9 Handlers benefits that are due.
64. PERS reviews contracts by which contributions are made including, but not limited to, the contract for K9 Handlers.
65. Metro and PERS communicate with one another concerning proper payment of benefit contributions into the PERS retirement system.
66. The communications between Metro and PERS include discussions about the tasks and conduct of Metro employees, which includes, but is not limited to, conduct of PERS' participants.
67. Both Metro and PERS assume a responsibility to ensure that information given and provided is accurate.

68. PERS makes decisions regarding benefits based upon its review and analysis of relevant contractual language and its understanding of duties and actions performed by participants including, but not limited to, K9 Handlers.

69. PERS makes its decisions based upon its collection of information not received from Metro.

70. Metro failed to report that Canine Pay is made without regard to the actual hours worked.

71. PERS ignored or failed to recognized that Canine Pay is made without regard to actual hours worked.

72. PERS failed to properly audit Metro in regard to Canine Pay and ADP.

73. Metro, PERS and their managers breached a duty to Plaintiffs to ensure that Canine Pay was properly accounted for as part of the Plaintiffs' retirement.

74. Metro failed to properly pay contributions to PERS because of its breach.

75. PERS failed to properly credit K9 Handlers for hours worked and/or pay received.

76. Plaintiffs relied upon Metro and PERS to carry out their duties and responsibilities to ensure that retirement benefits are properly reported and/or funded.

77. The failures of Metro and PERS constitute a fiduciary breach of their obligations and responsibilities owed to the Plaintiffs.

78. The responsibilities identified herein were carried out by individuals who are also fiduciaries.

## SIXTH CLAIM
(Breach of Statutory Duty – All Defendants)

79. The foregoing paragraphs are incorporated herein.

80. Defendants are given mandated duties pursuant to NRS 286 et seq.
81. Metro breached its statutory duties to Plaintiffs by the facts and circumstances alleged hereunder.
82. PERS breached its statutory duties to Plaintiffs by the facts and circumstances alleged hereunder.
83. The breaches are the cause of Plaintiffs' injuries.

### SEVENTH CLAIM
### (Compel Audit – PERS)

84. The foregoing paragraphs are incorporated herein.
85. Plaintiffs have a right to an audit of Metro by PERS to determine what benefits have and have not been paid out.
86. According to PERS Official Policies, each public employer is subject to review by PERS without prior notice on all matters pertaining to the Retirement Act and the outlined policies. After the audit, employers must make all adjustments to wage and contribution reporting within 45 or 90 days (depending on the status of the Member) of such notice.
87. Plaintiffs believe, and thereupon allege, that if such a review is performed by PERS, it will learn about Metro's erroneous classification of Canine Pay and ADP, and can correct it in accordance with NRS 286 et seq. or as may be proper.

### EIGHTH CLAIM
### (Negligence – All Defendants)

88. The foregoing paragraphs are incorporated herein.
89. Metro owed a duty to Plaintiffs to properly provide information to PERS.
90. Metro owed a duty to Plaintiffs to properly remit benefit contributions to PERS.

91. Metro breached its duty to Plaintiffs by incorrectly reporting information to PERS.
92. Metro breached its duty to Plaintiffs by failing to remit proper contributions to PERS for Canine Pay and ADP.
93. By reviewing Metro's contracts in regard to Plaintiffs, PERS assumed a duty to Plaintiffs including, but not limited to, confirming that contract terms complied with federal and state wage laws so that benefit payments and calculations are correct and accurate.
94. By auditing Metro, PERS assumed a duty to Plaintiffs including, but not limited to, confirming that wages and benefits complied with federal and state wage laws so that benefit payments and calculations are correct and accurate.
95. PERS knew or should have known that Plaintiffs were not properly being paid wages.
96. PERS knew or should have known that Plaintiffs were entitled to benefit credits for Canine Pay and ADP.
97. PERS assumed a duty to Plaintiffs to inform them of discrepancies with Metro's interpretations, conduct, payments and lack of payments regarding Plaintiffs.
98. Plaintiffs have been damaged because Metro breached its identified duties by not properly reporting and/or paying owed contributions to PERS.
99. Plaintiffs have been damaged because PERS failed to inform them of Metro's failures and for PERS' failure to properly audit and account for payments associated with contractual obligations.
100. Metro and PERS are the proximate cause of Plaintiffs' damages.

## NINTH CLAIM

### (Unjust Enrichment – Metro)

101. The foregoing paragraphs are incorporated herein.
102. Plaintiffs allege that Metro has unjustly withheld retirement benefits by failing to make contributions to PERS for Canine Pay.
103. Metro has also been unjustly enriched by retaining ADP compensation that ought to have been paid to Plaintiffs throughout their time as K9 Handlers.
104. Plaintiffs performed their K9 Handler duties at Metro's request.
105. Plaintiffs allege that this money was taken and retained against fundamental principles of justice and equity, and that Plaintiffs are entitled to a recovery because of the alleged actions.

## TENTH CLAIM

### (Unjust Enrichment – PERS)

106. The foregoing paragraphs are incorporated herein.
107. Metro made contributions to PERS on behalf of each Plaintiff.
108. The contributions included money to count as a credit toward the Plaintiffs' retirement for Canine Pay.
109. PERS retained the contributions received from Metro to the detriment of Plaintiffs.
110. Plaintiffs allege that this money was taken and retained against fundamental principles of justice and equity, and that Plaintiffs are entitled to a recovery because of the alleged actions.

## ELEVENTH CLAIM

### (Unpaid Wages – Metro)

111. The foregoing paragraphs are incorporated herein.

112. Metro had a duty to pay wages to Plaintiffs in accordance with federal and state law.
113. Metro suffered Plaintiffs to possess and control PSDs with the expectation that Plaintiffs were continuously responsible for supervision and control of the PSDs.
114. Metro suffered Plaintiffs to work in the supervision, custody and control of PSD's even when the Plaintiffs were not considered officially on duty, i.e. performing policing functions during an assigned work shift.
115. Metro failed to pay Plaintiffs for each hour of work.
116. Metro's failure to properly calculate base pay resulted in an underpayment of wages to Plaintiffs.
117. Metro owes Plaintiffs unpaid wages.

## TWELFTH CLAIM
### (Liquidated Damages – Metro)

118. The foregoing paragraphs are incorporated herein.
119. Metro is liable to Plaintiffs for liquidated damages in an amount equal to unpaid wages pursuant to 29 U.S.C. § 216(b).

## THIRTEENTH CLAIM
### (Attorney Fees – Metro)

120. The foregoing paragraphs are incorporated herein.
121. Metro is liable for Plaintiffs' reasonable attorney fees pursuant to 29 U.S.C. § 216(b).

## FOURTEENTH CLAIM
### (Declaratory Judgment – All Defendants)

122. The foregoing paragraphs are incorporated herein.

123. An actual controversy and legal dispute has arisen and now exists over the respective rights, duties and legal obligations of the Parties alleged and described herein.

124. Based upon the facts, occurrences, causes, circumstances and continuing damages alleged and described herein, there exists a justiciable controversy between Parties, whose respective interests are diverse; Plaintiffs have a legally protectable interest in the controversy; and the legal and factual issues involved in the controversy are ripe for judicial determination.

125. Plaintiffs desire a judicial determination of their rights and obligations under the facts, occurrences, causes, circumstances and continuing damages alleged, including a declaration as to whether any or all of Defendants named herein owe a duty and/or damages to Plaintiffs under the Statutes.

126. The aforementioned Causes of Action are brought by Plaintiffs pursuant to the Nevada Uniform Declaratory Judgment Act, set forth at NRS 30.010-30.160. A judicial declaration is necessary at this time in order that the Parties may ascertain their rights, duties and legal obligations under the facts and circumstances set forth herein.

FIFTEENTH CLAIM

(Injunctive Relief – NRS 33.010 – All Defendants)

127. The foregoing paragraphs are incorporated herein.

128. Plaintiffs are entitled to continuing contributions from Metro to PERS for pensionable time that has been either denied, not paid, or not credited to Plaintiffs including, but not limited to, contributions and credits for Canine Pay and ADP.

129. Plaintiffs are entitled to receive future retirement benefits from PERS for pensionable time including, but not limited to, payment for Canine Pay and ADP.

130. Without an injunction directing the Defendants to pay to Plaintiffs pension benefits that include calculations for Canine Pay and ADP, Plaintiffs will continue to suffer injury making the Court's judgment ineffectual.

WHEREFORE, Plaintiffs pray for the following relief:

1. This Court's Order declaring the legal rights, duties and obligations of Plaintiffs and Defendants under the facts, occurrences, causes, circumstances and damages set forth herein, including the Statutes and Chapter 286 of NRS;

2. Injunctive relief directing the Defendants to pay contributions and pension benefits for Canine Pay and/or ADP;

3. General or Compensatory Damages for the losses to each and every one of Plaintiffs' pension funds in PERS in excess of $15,000;

4. General or Compensatory Damages for unpaid or underpaid wages;

5. Liquidated damages;

6. An award of reasonable Attorneys' fees, expert fees and costs; and

7. Such other and further relief as this Court may deem just and equitable under the circumstances.

DATED October 2, 2020.          CHRISTENSEN JAMES & MARTIN, CHTD.

By: /s/ Evan L. James
Evan L. James, Esq. (7760)
Laura J. Wolff, Esq. (6869)
7440 W. Sahara Avenue
Las Vegas, Nevada 89117
Tel: (702) 255-1718
Fax: (702) 255-0871
Email: elj@cjmlv.com; ljw@cjmlv.com
*Attorneys for Plaintiffs*